Last case this afternoon is in re Marriage of Bradley, number 4110392. For the appellant is Gerald Tuberwilke. Announced correctly, sir? Yes, Your Honor. Thank you. And for the appellee is Andrew Schnack and Casey Schnack. Will you be splitting the argument?  OK. I want to first begin by thanking you, counsel. We are ahead of schedule, and that's one of the reasons we asked everyone to be here. You are here, as we requested. I thank you for being here so we can start. So with that, you may proceed, counsel. Thank you, Your Honor. Justice McCullough, Justice Steigman, Justice Polk, in 35 years of practice, Mr. Schnack's got me by about two more years than that. I've never had a case like this where I've appealed a sanction. And that is the number one and most important issue that we're asking you to address. And in referring to volume 7, page 34, when we got down to the final proceedings in this case, Judge Drummond came to the conclusion, after Mr. Schnack submitted his proposed distribution of maintenance, child support, division of marital and non-marital assets, and his line was, he lied, you win. And what that meant to my client is a property that was a Missouri farm that was valued at $227,000 that was clearly, as the judge found in his decision, a non-marital asset, was converted, and he was barred. My client was barred from claiming that as a non-marital asset, and it was treated as a marital asset. And then the court did a 50-50 division. So the sanction, the sanction that was involved. Seeing that being that he said that was a sanction. I'm sorry, Your Honor? With respect to the Missouri farm, I have difficulty seeing where the trial court said this is a sanction against. I agree. I agree. I think it's much more than a sanction. Supreme Court Rule 219C lists that the idea of sanctions, and it lists what sanctions there are that you can impose, is to ensure compliance with discovery. But what the judge did here is he said, I'm barring you. It's clearly non-marital property. You've proven it's non-marital. But because you lied originally and said you didn't pay for it and you paid your mother $36,000 that came out in disclosure later, that sanction is going to be that I'm barring you from claiming it as non-marital. And it caused a $227,000 farm to be listed as non-marital. She got the benefit of that, therefore, of $113,000. I'm not sure the record supports this assessment, but let's assume it does. What's the matter with that? It's inappropriate under the rule. As Judge Drummond explained, and I thought less is candor for doing it, he said something about the bottom line is the respondent lied, and lied more than once. Boiled down to simplicity, the respondent's argument is, OK, she caught me. Make me pay some of her fees. If this court adopts this rather simplistic approach to lying, then lying to gain an advantage just becomes an economic equation. The stakes far exceed the potential fees, and telling the truth simply becomes a cost-benefit analysis. Isn't he right? I don't believe he is in this case, and I can specifically say why. That's a simplistic way to look at it at the very end, but there was one lie that my client admitted to, and I need to give you a little background. Well, one line that he admitted to, but I get the impression that there are lots of other lies that the judge found. That this whole thing was a conspiracy by your client to withhold this big asset, to not let the court even know about it, to lie about it, and he got caught. And he says, OK, well, you know, I tried. Judge Drummond wasn't impressed. I agree that that's the conclusion he came to, but I don't think the record supports that. Now, on the basis of the conclusion, he saw and heard these people, and you understand, counsel, when he decides about lies, that's a very deferential ruling for us to be making. Unless it's unreasonable on this record, we're going to accept it. If I can answer that in this way. OK, the day that we were set for trial, the initial day, my client came in to see me, Mr. Bradley, and at that time, we reviewed the pretrial affidavit. At that time, he saw a deed that was from his mother to him that we went to court, first of all, in November of 2009. It's the first time he saw that deed, and that fact's never been disproved. He knew that his mother was to give him the property, and he knew that he was to get it upon her death, and he treated the property. She continued to live there. It was her homestead. It was where her cattle was, where she lived all of her life. The next part of the equation comes is when he saw the deed, the judge said we're going to have the property appraised. Sanctions are when you do everything to abuse the process. My client provided his tax returns. He provided, made access to the property. He provided tax bills. He provided everything on his farm account, his farm income. He provided his check, showing when he found it, that he paid $36,000. Well, then did he also show that he had paid the taxes on the property since 2005? Right. He provided all that. So if you've got a guy that's going to buy it. How do you put that together and say, well, I didn't know about it until 2009? Because he treated it like he believed that his mom told him. It was hers until her lifetime. And that's what he told throughout and was never disproved. His mother came in. Counsel, it's twice you've now used the phrase, it was never disproved. There's no burden on the judge, as a prior effect, to disprove anything. He could look at him and say, I think you're lying. Can't he? He can. Especially when he was caught in a lie at least once. Upon whom falls this burden to disprove his statements once he's been caught in a lie? If there would be a burden and it shifted to us, I would say that we've done a good job in providing complete, entire discovery, the good for us, the bad for us. Well, I'm just not even talking about your discovery. I'm just talking about the credibility of your client once he's been caught in a lie. Why should the judge believe anything else he says without documentation supporting it? So he says, gee, this is the first time I saw the deed. I don't believe it. Why should I? I know he's a liar. Don't I? The judge can take that conclusion. So then, so then if you, well, if he takes that conclusion, that's fine. But then is $113,000 a reasonable sanction for what I'm telling the courts today? And I believe the record supports. Well, it's somewhat attractive in this sense. We, this is a panel of four decades worth of trial judging. We've seen a lot of suspected perjury in our time. And on this court, we see records where we see a lot of this too. And I frankly don't like it. I suspect my colleagues don't either. And maybe it's a good, healthy step for a trial court, having seen someone lie, to say, I'm not going to let you get any advantage from this at all. I'm going to take away all the advantages you attempted to obtain. Maybe that's a healthy thing to do. Couldn't it be looked at that he simply found the farm to be marital property and gave half of it to the wife? He clearly didn't find that. It's in his last ruling, which is part of our appendix. He goes through in detail and finds why it is non-marital, that we've proven it's non-marital without a question. His finding in his final ruling is it's non-marital. But the sanction is, I'm barring your claim. Clarifort found it non-marital just from looking at the record. And what did his own brother say about the property when it was sold, or when his brother bought it? His brother said that he did purchase it from his mother. In what year? There were three transactions with three children all at the same time, 2005. So four years before 2009. Yes. Regardless of how the trial court said it as a sanction, isn't it really just simply a division of the property of the parties? Well, the total marital estate that the court found, which included the $227,000 farm that the judge said was a marital asset, was $318,902. So this farm, when you look at the way the judge divided the numbers in the end, constitutes about 2 thirds of the total marital estate. If you took it out, the marital estate would have been about, whatever, $318,000 minus $227,000. Well, where was the trial court wrong in doing what it did? Yes. Where was it wrong in doing what it did? To sanction someone? I'm not talking about sanction. You just were just talking about the trial court divided the property. And I'm saying to you that I didn't even mention the word sanction. What was wrong with what the trial court did? Because when you put the combination together, and that's part of the second argument in our appeal, the judge also gave significant maintenance in this case. So maybe I'm wrong, but the way I see it, that when this is a 16-year marriage, when you've got a court that's looking at dividing close to 50-50 and giving maintenance, that's one way to go. If you're going to do away with maintenance, then you'd have more of a disproportionate share given to the person or the spouse that makes the lesser income. So that's part two of our argument, that if you're going to sustain that, or if you're going to look at it from that point of view, he was ordered to pay her $250 a week, which is $13,000 a year in maintenance, plus his child support obligation was another $18,500. That's what the child support got to do with maintenance. When you look to his total abilities and his ability to pay maintenance, if the court would have said, we're not going to give maintenance, I'm going to convert this as a marital, I'm going to leave it in as a marital asset as a sanction, but I'm not going to give maintenance, we'd be in a different ballgame. But my argument in the second part of our briefs, when you put them together, it's an inappropriate sanction, and it's an unfair division of assets. With regard to the problem that I see in the case that Mr. Bradley, except for that first day, clearly provided all discovery. And the first day that he was in court, Steigman said it, but maybe the judge didn't believe him that day, that he didn't know about the deed. There's sure good evidence that was put before the court, and even his mom said it was a gift. The property's valued at $227,000. In 2009, 2010, the purchase price was $36,000. Well, why would the trial court have talked about what your client said? I don't own the property. And then he changed it to, OK, I didn't know I owned the property. And he changed it to, OK, I own the property, but it was a gift. And then he says, OK, I own the property, and I partially paid for it with non-marital funds. How does the trial court ever give any of that any credence? The trial court found the last, in the end, the trial court found that last statement to be true, that it was proven to be non-marital property from a 1983 accident that my client received. He received a $90,000 settlement. He had a structured settlement. The last payment came in, I believe, in 2003, 2004. It was $90,000. That money was isolated, and that's where the $36,000 came from that he gave to his mother. His mother and him also testified it was a discounted price, which the mother did a discounted price with him and two of his other siblings as part of, I'm going to call it, loose estate. So I think that the sanction, I mean, we're over here. We're asking the court to consider it, the sanction for $113,000 for assuming that my client, assuming that the court clearly said he's not telling the truth that day. He provided all discovery. He gave all information that was positive for him, that was negative. He produced the check. He produced his tax returns. He got his mom to produce her tax returns, which she wouldn't have had to do. He laid it all out in front of the court. He played the game fairly. There was not one motion to compel. There was not one motion that he was denying discovery. The only issue that came about is the first day that the court found that when he got up and he said, I didn't pay any consideration, and he admitted that at the trial, that he did pay $36,000 that came out of his settlement, which he purged. So in regard to the other issues that are before the court, there was not a big issue as this, but there was a $7,000 account that was his farm account that the court found that the farm was clearly non-marital, and he put that in the equation as a marital asset. We're asking the court to consider that. And as far as the maintenance, again, when the court is looking at a total distribution of 50-50, we believe in this case the maintenance is high. My client had a net income of $57,000, and the wife had just assumed a job making $320 a week. In regard to the child support, the last issue or the second last issue that I put in on the child support, we do believe the judge made an error. And the error was that he felt that we only provided, out of the 26 pay periods, 20. When we came to our calculations, that we only provided 25 pay periods. That's not correct. The last check stub we provided included the pay period up to 12-18. My client was paid every two weeks. And in regard to the every two weeks, his next pay period would have come in the following year. So he did provide a check stub that showed his year-to-date earnings that would have included the 26 pay periods. As far as the attorney fees, that's a double argument, too. If you're going to go ahead and give a sanction barring him from making his claim that puts $113,000 in the mother's pocket, why award any fees at all? Isn't that enough of a sanction? And instead, the judge went on and gave another $6,000 in attorney fees. So we're asking the court to look at the record in this case. We're asking the court to find that $113,000 is too much of a sanction. If you look at the total record in this case, if you look at Mr. Bradley's cooperation in the discovery that he provided, if you look to Mr. Bradley's conduct throughout, he answered the questions, he produced witnesses, he produced document after document. When requested to do so, there was never any allegation. Well, he didn't know about it before. Before he was asked to produce these things, he didn't know that that was maybe kind of important. To release? I'm sorry, Your Honor. He didn't know all these financial things that he was going through. He just thought nobody cared about knowing it? I'm not being difficult, but I don't understand. You're saying, did he not know that he'd have to produce the discovery anyway? Is that the question? I'll pass. Mr. Chairman, can I ask you a question? Sure. On this issue of the 25 paid periods versus 26, after you got that order from Judge Drummond that was dated March 25, 2011, did you bring that mistake to his attention? Yeah, we had a hearing later, and it In fact, I filed a motion for clarification, and he did make a lot of changes in his ruling based on that motion for clarification. None of them dealt with changing his position in regard to the sanctions. Did you have an oral argument on that? Yes, we had a hearing. Did he address it orally, the 25 versus the 26? Do you remember? I don't think he did. I'd be glad to answer any other questions. OK, you'll have another opportunity to address this in rebuttal. Thank you, counsel. Mr. Schneck? Is that pronounced correctly, Schneck? It is. Employees of court, counsel, good afternoon. This case is not about a discovery violation. This isn't about a CD that was overlooked inadvertently or intentionally. This case is about a gentleman lying, and lying repeatedly over a long period of time. We filed interrogatories, which were answered under oath, and he lied. We filed requests to produce, which were answered under oath, and he lied. We filed detailed pretrial memorandums with the court under oath, and he lied. We came to court, and for the first time, it was suggested that my client had just been informed that he owned a farm in the state of Missouri. It was not his mother's farm, but it was his farm. Well, pausing right there, I want to make sure I understand what you're saying. The earlier lies apparently were not regarding the farm. Is that correct? We didn't know anything about the farm, that he owned the farm, that he had an interest in the farm, that he had income from the farm. But the earlier lies were the omission of the farm? The earlier lies were the omissions. It was never mentioned in any written discovery or in any written document. So then you were coming to court, and what happened? I come to court, and my client got a tip from one of his buddy's wives, saying, I can't take this anymore. He owns that farm. That was brought up in court on the, I think it was the 18th of November. On the first day, it was to be the only day. This was a fairly simple divorce, quite frankly. And he lied. Well, it's not his, and I think at that time, Justice McCulloch referred to it. I don't own a farm. If I own a farm, I don't know about it. And if I do have a farm, I don't have a deed. And if I have a deed, it wasn't paid for. And if it was, it was a gift. And if it wasn't a gift, it was paid for with non-marital funds that also, ironically, weren't disclosed. But the fact of the matter is, I think the most, I've practiced in front of Judge Drummond for a long time. And I think this is one of his better opinions, not because we happened to win, but the manner in which he set it out. This was errors, lies, of omission and commission over a lengthy period of time. All through the discovery process. Then after he gets caught in court, he continues to lie every time we come back to court. And when confronted with the truth, like the deed, he changes his tune again. The fact of the matter is. How lengthy a period of time was this? When you don't count the discovery period. Count the discovery. The first. Almost a year. The first discovery. Almost a year. From the time it was filed until the May final hearing and the final decision where Judge Drummond announced, you lied, you lose. Well, let me. You're making a strong argument. I don't want to stop you from conceding at some point. But I want to make sure, for my own understanding of this case, what your position is. You're arguing that we should affirm the trial court's action. But other than, you heard Mr. Timberwolke's argument. Other than as a sanction for lying and misrepresentation, all that happened now for over a year. Did you claim at the trial level that your client, in fact, had an interest in this property that was marital property and should be so viewed and part of the marital estate? The easy answer to that question is, we never knew what we had in this property because he would never tell us. And we couldn't find out. Well, at some point, you discovered the lie. And now you know. And it's $136,000 and all the rest. We claimed that it was our property. When we found out about it, when we saw the deed, it was our position. The deed was acquired, the property was acquired during the marriage. It's a marital asset. That's when it got to. It was paid for with a gift. Well, then it turned out that wasn't true. Then his next theory was, it was paid for with non-marital funds. Well, what non-marital funds? We haven't been informed of any non-marital funds. Well, I was heard at work. Before I was married, I received a structural settlement. And then I was receiving funds throughout the course of the marriage. Lo and behold, that was new to us. We were literally trying this case on the fly. That's the problem I have with all of this. To say it differently, so your position is there is at least a colorable argument from your point of view that this is marital property anyway. Absolutely. It's clearly acquired during the marriage. It's acquired by deed. It is paid for with funds, the source of which he says are a gift. And that turns out not to be true. It was acquired by deed in 2005? Apparently, yes. And when were they married? It was a 16-year marriage. So that would be in 93. So they've been married for, let's say, 12 years when he acquired this by deed and paid for it in some fashion? That appears to be the case, yes. But the funds, he claims, were non-marital funds from something else that we didn't know about? That's what he said. When did the non-marital funds first make their appearance? In one of the subsequent hearings that we had come back. Clearly not on the first day, not in any discovery. It was the second or the third time that we came back. Well, to be more explicit, Mr. Schnack, the reason I'm asking you this is I want to make it clear what your position is. Can we affirm, are you arguing that we can affirm the ruling of Judge Stroman here on the basis that the record does not show an abuse of his discretion in classifying this property as marital property, leaving aside any of the discovery 219 issues? Yes, I am. I want to make it clear. He didn't classify it as marital, did he? I don't think that that happened. I disagree with Mr. Tim Welke as to what Judge Stroman did with this property. What do you think he did? I think Judge Stroman awarded this property to his client, period. And then awarded my client the $60,000, the home, the interest, the equity, and the home, the maintenance, and the things of that nature. But the facts are, I don't know because of the problems that we were continually confronted with of having to try a case on the fly. Let me ask it this way. And this is regrettable. Judge Stroman's a very sharp guy. But one of the things this court has been urging people to do, the judges handling divorce cases, is to say, before you do anything else, please, judge, tell us what your findings are, what's marital property, and what isn't. I'm sure you're familiar with our cautions. And I take it as sharp as he was, in this case, it is your position. That was never explicitly said. I would have to agree with that. And in defense of Judge Stroman, and he certainly doesn't need me to defend him, but the fact of the matter is, I think he was as perplexed as we all were as to what he had in front of him as to what to deal with. Well, let me ask it then this way, Mr. Schmack. Doesn't it look as if what he did with this property is he must have deemed it to be marital property and let Mr. Bradley keep it? But giving your client a big chunk of it, maybe another way to put it, if he had said, this is marital property, his disposition of it would have been essentially the same, wouldn't it? I agree, yes. So it looks like he was treating it as marital property, but he never said one way or the other? I think that's a fair argument. Did he ever say, this is non-marital property? No. I don't think we got to that point. I don't think there was enough evidence. I thought he said he wouldn't allow him to claim it was non-marital. He clearly made that statement many, many times, that he was fed up and that he asked me about authority. And I pointed out Supreme Court Rule 219, in my opinion. And I think he agreed with me. That gave him an awful lot of latitude to do whatever he wanted. And I think that's what he did. That phrase could be interpreted as meaning, gee, Mr. Timberwolke makes a good point. This is non-marital property, but it's sanctioned under 219C. I'm not going to let him claim it. I'm going to deal with it as if it's marital. I can certainly go down that road, and I would love to accept your position. Well, but then the question is, is this an appropriate sanction? Mr. Timberwolke is arguing to us that it isn't, as opposed to the question of, is it marital property in the first place? First off, I think the court found that it was marital property since there had been. There is a specific finding that it was non-marital. I disagree with him on that. But the fact, if you're asking me to answer the question as to whether this sanction is appropriate, that clearly, I think, comes under Judge Drummond's purview. He saw the parties. He saw how Mr. Bradley acted in court. He saw him tugging at Mr. Timberwolke, trying to tell him what to say and what to respond. He saw the continued shenanigans. He's clearly upset at this. And rightfully so. We all were. Well, but let me ask you this. Isn't Mr. Timberwolke correct? Is there any precedent for a sanction of this sort in this magnitude? Going back to what you said, we all suspect that we're not hearing the truth all the time. But to get to this point, I would have to agree with him. I have never been involved in anything close to this. If you get caught in a lie, the smart thing to do is say, you got me, I did it. He didn't do that. He just kept lying, for lack of a better word. And the fact of the matter is, this was a very simple, not a large divorce, that should have been done in no time. And it would have been, had he told the truth. But he didn't. And he kept doing this. And again, my suggestion, and apparently great minds think alike, I have to agree with you that if this is allowed to happen, it's a licensed lie. I think Judge Drummond's analysis of a cost-benefit analysis is a good idea. If I risk $5,000 in the opposing counsel's attorney fees to gain $100,000 or $200,000 farm, let's take a shot at it, because I've got the $5,000 to risk. That's not what divorces should be about. We tell our clients, at least I do when they ask me, what do you want me to say? I want you to say the truth, because if you don't, you lose your credibility to one issue. You lose your credibility to all issues. That's what happened to Mr. Bradley. He had no credibility. He didn't have any credibility. And he made things worse for himself, and worse for himself, and worse for himself. And my suggestion is that based on Supreme Court Rule 219, it's very clear that Judge Drummond acted appropriately Are these sanctions an abuse of discretion? Are they too much? Well, when is it too much for him to do what he did? If he would have got away with it, is it too much to say that he stole a $220,000 farm from her? Is that appropriate? I think when you look at it from that standpoint, what did he try to do, as opposed to what happened to him when he got caught? You get caught too bad. That's my opinion for what it's worth. Thank you. Mr. Frank, I ask you a question. This exhibit, which is the marital estate balance sheet, was that prepared by you? I know Judge Drummond refers to it in his order. As I sit here right now, I don't know. I don't believe so. What happened was, eventually, we did a motion. Jerry, Mr. Timwell filed a motion to reconsider. We went back in front of Judge Drummond. We argued it. He just referred to that. Judge Drummond took the case back under advisement and came out with a much more detailed ruling than the one that we are here on today. That's the March 25th one. That's my opinion. And this was marked Exhibit B. Well, in this exhibit, it looks to me like he's included the 118 acres in the marital estate. That's why, when we were talking about it, and Mr. Timwell is so certain that this is non-marital, I wrote two notes down to myself. One is facts, and I think he's arguing facts. And I think Judge Drummond decided those facts for us. So you think he might have put it in the marital estate? I hope he did. I hope you think he did. But I can't. He's one of the judges in Adams County and does a lot of marital stuff, doesn't he? Oh, he probably does 90% of it. Yeah, he's got a full-time job. Thank you. Thank you, counsel. Mr. Timwell, we'll keep. Thank you. I can address Justice Steinman's issue clearly. The record supports clearly that the judge found it was a non-marital asset. Where is that, counsel? I refer to page three of his decision. It's C-424, 425, and it's the finding of the court. What happened is the judge originally said, I'm going to impose this sanction. And the words I used before, he said, he lied, you win, referring to Mr. Schnapp. What did the trial court mean in its order when it said the court finds that the father's misconduct was assessed a monetary penalty, barring his claim that the land is non-marital, is a sufficient sanction? That's $113,000 sanction, Your Honor. Found it non-marital, found it, simply found it property with marital. If I could read this paragraph, because the judge, it says the court made a ruling in November 17, was inadequate to set forth the specificity for the reasons for the sanction as required by 219. The court stated that it was finding that the undisclosed 118 acres were marital. It is more accurate to state that the court, pursuant to the rule, is barring the father from maintaining his claim it's non-marital. It appears to this court that the $36,000 paid for the farmland was from a non-marital source, being a personal injury claim which accrued before the marriage, that the father segregated those funds, that no marital funds were commingled in the father's separate account, and the total price was paid from these funds. We filed a supplemental pretrial affidavit on January 20, claiming the 118 acre farm is non-marital. We at that point. We're just pausing there, and I'll give you an opportunity to respond. I'm just kind of curious. On the merits, why is it non-marital? They've been married for 12 years. He pays for it. What, you know, how? He had a property acquired during the marriage is not marital. Because the purchase, the two parts to the acquisition, the mother and Mr. Bradley both testified it was a well-reduced price. It was a gift, a good part of a gift. $36,000 was paid, which we disclosed, by providing the mother's tax return, showing that she received the money along with other money from two siblings. But in answer to your question. Well, where did the money from your client come from? It came from what we filed in our amended supplemental pretrial affidavit that was filed April 30, 2010. It was a structured settlement that he received from a premarital accident. And his last payment, he had, I think, three lump sum. Now, if he had just paid cash he had from working for those 12 years during the marriage, it would be marital property, wouldn't it? I agree. Right. Is the judge obligated to accept, oh, it was from the structured settlement? We laid it out clearly in our pretrial. That wasn't the question I asked. Is the judge obligated to accept that explanation? I believe he is if he follows the law. Because it was a premarital asset, the settlement was completed well before the marriage. Even though it was structured, when the last payment came in, this $90,000, we got the bank account, we got the checks, we got the contract. It took us a long time to get this information through, I think, a Texas attorney. He had left the firm, but we located him. And we laid it out in our amended supplement, the pretrial affidavit. We laid it out in our second supplement, which was filed May 10 when we received the documents. And we laid it out in our third when we produced the trans-America document that had the actual settlement structures. Does the trial court ever explicitly state, I'm concluding that this is marital property, or I'm concluding that this is non-marital property? Yes, I believe that what I just read to you is his conclusion. It's on C-424 and 425. And what does that say again? Tell me, I've got it before me. I'm not sure I understand. It appears to this court that $36,000 paid for the farmland. Where are you reading? I'm reading Judge Willett. What page? C-424, 425. Oh, the last line there. OK, it appears to this court, go ahead. And then the next page, 425, that the $36,000 paid for the farmland was from a non-marital source, being a personal injury claim that was accrued before the marriage. That the father segregated the funds, that no marital funds were commingled in the father's separate account, and that the total price was paid from these funds. So I don't think the judge had any question in his mind that it was a non-marital asset. Well, he said it was non-marital. Right. What about the question that Justice Pope asked about? No, excuse me. He said he barred the husband's claim that it was non-marital. Right, as a sanction. What about Justice Pope's question about the proceeding at the petition to reconsider, where it looks like Judge Drummond was now putting it into a marital property context? The document she was referring to is at the end of the same decision I just read. It's the last page to that decision. That was prepared by Judge Drummond. Mr. Schnock prepared one on what I read to you first, where he said he lied, you win. Mr. Schnock had a proposed distribution on that day that the judge adopted completely. But I went back and it shaved the, it was originally like an $84,000 equalization. He cut it back to $66,000 because we had some valuation differences. And we did a motion to reconsider on that. I took up a lot of your rebuttal time with my questions, counsel. I'll give you just another few moments here if you have anything further. I just, I think if you look at the record in this case, the summary of it is the sanction. And I think despite the, I know you have the credibility issue, which you can't really, you don't, rarely do you touch that. But I think this is a case, I tried many, many cases with Judge Drummond. I think he's doing a great job over there. I think maybe he was wanting to set an example. Don't come to my court and lie. It's going to cost you $113,000 and maybe the word will get out. That is not a reasonable sanction. If you look to my client's total conduct in this case, he produced, he produced, he produced. They never had to file motions for discovery. He got documents that were out of state. He got a warrant. Why did the federal court ever say two or three times that he lied? He changed his position. He said he never saw the deed. So I have to agree with Judge Stockman. Maybe he didn't believe my client. My client said he never saw that deed. He and his brother both stopped him. There was no formal real estate closing. He and his brother and his sister, his brother testified. We just stopped in the lawyer's office. We signed papers and left the chair. Thank you, counsel. All right. My colleague wishes to ask a question. Of Mr. Schnack. Mr. Schnack, I meant to ask this to you while you were up there, but Mr. Timmerwolke has addressed the issue of whether the child support was correctly set on the 25 pay periods versus 26. Are you in a position to concede he's correct or not? No, I'm not in a position to concede he's correct. A couple of things. One is, that was clearly one of the issues that was brought up before Judge Drummond on his motion to reconsider. And as we all know, Judge Drummond did a lot of work on it and came up with the final decision, which is obviously, again, I think very well-reasoned and very well thought out. A couple of points. One is, by that time, Mr. Bradley, in my opinion, had lost all of his credibility. So whether Mr. Bradley said it or not, you couldn't believe him. The thing that is not taken into consideration is the income from his farm, because we never had that. Right. I know that, but apparently a paycheck was produced that showed he was paid through December 18th, and his next pay period would have been in January. I can't concede. I don't know if Judge Drummond considered that or not. When addressing that issue, I think it's more important that Judge Drummond just simply looked at it as, look, I don't know what this guy makes. I don't know what he's made off the farm. I'm going to set it at this figure, because this appears to be a correct and fair figure, based upon the evidence that I have in front of me. And I can't believe what Mr. Bradley has, because his income was clearly, at that time, more than just his pay stubs. He owned a 120-acre farm that generated income. Trying to figure out what it was was another task. Thank you, counsel. We'll thank this member in advisement. Need recess.